## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *et al.,*<br>Plaintiffs,<br><br>v.<br><br>FIRST DIRECT, INC., *et al.*,<br><br>Defendants. | Case No. 1:25-cv-01480 |

---

**PLAINTIFFS' REPLY TO FIRST DIRECT, INC. IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PERSONAL JURISDICTION DISCOVERY**

---

*Attorneys for Plaintiffs*

**PEM LAW LLP**
Rajiv D. Parikh
Kathleen Barnett Einhorn
Jessica A. Merejo
One Boland Drive, Suite 101
West Orange, New Jersey 07052
Telephone (973) 577-5500
Email: rparikh@pemlawfirm.com
 keinhorn@pemlawfirm.com
 jmerejo@pemlawfirm.com

**BOIES SCHILLER FLEXNER LLP**
Adam Shaw (admitted *pro hac vice*)
30 South Pearl Street, 12th Floor
Albany, New York 12207
Telephone: (518) 434-0600
Email: ashaw@bsfllp.com

Mark C. Mao (admitted *pro hac vice*)
Julia Bront (admitted *pro hac vice*)
44 Montgomery Street, 41st Floor
San Francisco, California 94104

Telephone: (415) 293-6800
Email: mmao@bsfllp.com
jbront@bsfllp.com

**BIRD MARELLA RHOW LINCENBERG DROOKS NESSIM LLP**
Ekwan E. Rhow (admitted *pro hac vice*)
Elliot C. Harvey Schatmeier (admitted *pro hac vice*)
Bill L. Clawges (admitted *pro hac vice*)
1875 Century Park East, 23rd Fl
Los Angeles, California 90067
Telephone: (310) 201-2100
Email: erhow@birdmarella.com
ehs@birdmarella.com
bclawges@birdmarella.com

James Lee (admitted *pro hac vice*)
100 SE Second Street, Suite 2800 Miami, Florida 33131
Telephone: (305) 357-8434
Email: jlee@bsfllp.com

Eric Palmer (admitted *pro hac vice)*
401 E. Las Olas Blvd. Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 356-0011
Email: epalmer@bsfllp.com

**MORGAN & MORGAN, P.A.**
Ryan J. McGee (admitted *pro hac vice*)
John A. Yanchunis (admitted *pro hac vice*)
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 223-5505
Email: rmcgee@forthepeople.com
jyanchunis@forthepeople.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES......................................................................... ii

INTRODUCTION .................................................................................1

ARGUMENT .......................................................................................1

I.    FIRST DIRECT DOES NOTHING TO UNDERMINE PLAINTIFFS'
      THEORIES OF PERSONAL JURISDICTION ...............................................1

II.   FIRST DIRECT'S RESPONSES TO THE INTERROGATORIES AND
      REQUESTS FOR PRODUCTION Are INSUFFICIENT.............................3

CONCLUSION ....................................................................................7

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Hasson v. FullStory, Inc.*,
    114 F.4th 181 (3d Cir. 2024) ................................................................. 2, 3, 5, 6

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ........................................................................................6

*Marten v. Godwin*,
    499 F.3d 290 (3d Cir. 2007) ...........................................................................5

## **INTRODUCTION**

First Direct argues there is no ripe dispute because all issues were resolved by supplemental productions. But no such supplemental responses were ever served. The parties have continued to work through these issues, but paused to explore resolution of the case. The issues nonetheless persist, and Plaintiffs believe the requested personal jurisdiction discovery is needed as outlined in Plaintiffs' moving papers.

First Direct also fails to offer a meaningful argument against Plaintiffs' theories of personal jurisdiction or their discovery requests. Plaintiffs' requests are relevant and proportional to the personal jurisdiction inquiry. Thus, the Court should grant Plaintiffs' Motion and order First Direct to supplement their answers to Plaintiffs' Interrogatories and RFPs accordingly.

## **ARGUMENT**

### I.    **FIRST DIRECT DOES NOTHING TO UNDERMINE PLAINTIFFS' THEORIES OF PERSONAL JURISDICTION**

First Direct does not challenge Plaintiffs' theories of personal jurisdiction under either the effects test or the traditional test.

Jurisdiction exists under the effects test if "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson v. FullStory,*

1

*Inc.*, 114 F.4th 181, 187 (3d Cir. 2024). As detailed in the Motion, the Complaint states a prima facie case under this test by alleging that First Direct intentionally disclosed or made available the protected information of a covered person with knowledge that disclosure would violate that covered person's rights under New Jersey law and expose them to threats, violence, and harassment in New Jersey.

The traditional test requires "minimum contacts with the forum state" that "give rise to—or relate to—the plaintiff's claims." *Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021). As explained in the Motion, the Complaint alleges that First Direct purposefully collected data on New Jersey residents and commoditized that information. Compl.[1] at ¶¶ 2, 18–21, 29–50, 52–57. At least when taken together with the torts directed at New Jersey alleged in the Complaint, these contacts establish that First Direct "deliberately 'reached out beyond' its home" and could "reasonably anticipate being haled into court" in New Jersey. *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

---

[1] Unless stated otherwise, citations to "Compl." refers to the Complaint filed in *Atlas Data Privacy Corp., et al. v. First Direct, Inc., et al.*, No. 25-cv-01480-HB, Doc. 1. In case citations, all internal quotation marks and citations are omitted and emphases added unless otherwise indicated.

2

## II.    FIRST DIRECT'S RESPONSES TO THE INTERROGATORIES AND REQUESTS FOR PRODUCTION ARE INSUFFICIENT

First Direct's claim that "First Direct has provided supplemental responses to address the issues raised in the parties' meet and confer and First Direct's document production, which should resolve any remaining issues" is blatantly false. [Dkt. No. 35] ("Def's Opp.") at 3. First Direct specifically asserts that "[o]n July 28, 2025, certified supplemental responses to Interrogatory Nos. #3 and #4 were served." Id. at 3. First Direct has made no supplemental productions to Plaintiffs. Plaintiffs have informed First Direct that the Motion cannot be resolved until Plaintiffs receive the responsive documents, but First Direct refuses to agree to the confidentiality order that was entered in the other thirteen matters.

Because Plaintiffs have pleaded a valid theory of jurisdiction under the effects test, Plaintiffs are entitled to discovery into whether First Direct committed intentional torts in violation of Daniel's Law, whether First Direct "*knew* that…[claimants] would suffer the brunt of the harm caused by the tortious conduct *in the forum*," and whether First Direct's disclosures involved "content bearing a particular nexus to that forum" or utilized "a product or service bearing any special significance" to forum residents. *Hasson*, 114 F.4th at 196 & 190–1. And insofar as First Direct's other contacts with New Jersey "relate to" Plaintiffs' claims, such contacts are relevant "under the traditional test." *Id.* at 197. Among other things, this

3

means Plaintiffs are entitled to compel discovery with respect to the following categories of information covered by Plaintiffs' Interrogatories and RFPs.

**Evidence Concerning First Direct's Products and Services and Other New Jersey Connections**. As detailed in Plaintiffs' Motion, First Direct also failed to comply with Interrogatory 3 and RFPs 2 and 19, which seek information regarding First Direct's products and services that disclose information subject to Daniel's Law. Such information is plainly relevant to personal jurisdiction because First Direct's tortious disclosures of covered persons' New Jersey addresses and phone numbers in themselves constitute a relevant contact for purposes of both the effects test and the traditional test.  Interrogatories 4 and 6 and RFPs 1.b, 1.d, 2, 3, 20, and 22 seek information regarding use of First Direct's product or service by New Jersey customers, how First Direct obtained New Jersey data, and First Direct's marketing. This information is plainly relevant to whether each Defendant (i) "purposefully availed itself of the [New Jersey] market" by "conduct[ing] business with [forum] residents" and (ii) "'knows—either actually or constructively' about its customer base there and 'exploits that base for commercial gain." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 757 (9th Cir. 2025) (en banc) (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011)).

**Evidence of First Direct's Receipt and Review of Nondisclosure Requests**. First Direct also failed to comply with RFPs 5, 7, 14, and 15. First Direct's responses

indicate its misunderstanding that these requests only refer to communications First Direct had with Plaintiffs, but from the language of the requests, it is clear they seek information regarding First Direct's efforts to review and respond to nondisclosure requests received from covered persons. Such evidence is critical to establish that the Defendant "*knew* that…[claimants] would suffer the brunt of the harm caused by the tortious conduct *in the forum*." *Hasson*, 114 F.4th at 196. It is crucial that Plaintiffs have access to evidence that could show that First Direct read a particular nondisclosure request and thus acted with actual knowledge. And because courts "evaluate specific jurisdiction on a claim-by-claim basis," Plaintiffs need access to information that can potentially demonstrate on an individualized basis whether First Direct both (i) received and (ii) read a nondisclosure request sent by a particular covered person. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

**Evidence of First Direct's Compliance Efforts**. First Direct also failed to comply with RFPs 10, 11, 12, 16, and 21, which seek information about First Direct's efforts to comply with Daniel's Law and other New Jersey privacy statutes. Under the effects test, such evidence is plainly relevant to whether the Defendant "*knew* that…[claimants] would suffer the brunt of the harm caused by the tortious conduct *in the forum*" when it disclosed or otherwise made available a covered person's address or phone number after receiving a nondisclosure request. *Hasson*, 114 F.4th at 196. And under the traditional test, compliance efforts specifically geared toward

5

New Jersey strongly suggest that the Defendant "'systematically served a market in [New Jersey] for the very [information] that the plaintiffs allege[]…injured them in'" the forum. *Id.* at 193 (quoting *Ford Motor*, 592 U.S. at 365).

**Evidence of First Direct's Ongoing Acts of Disclosure**. First Direct also failed to provide a sufficient response to RFP 17, which seeks information regarding addresses and phone numbers that First Direct continued to disclose or otherwise make available after receiving a nondisclosure request from a covered person. But under the effects test, this information is necessary to show that the Defendant (i) "committed an intentional tort" in New Jersey in violation of Daniel's Law, and is plainly relevant to show that a Defendant (ii) "expressly aimed [its] tortious conduct at the forum" by knowingly and continuously disclosing a covered person's address and/or phone number after receiving a nondisclosure request. *Hasson*, 114 F.4th at 187. And under the traditional test, this information is relevant to whether First Direct is committing torts in New Jersey that qualify as relevant contacts with the forum. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 777 (1984); *Hasson*, 114 F.4th at 197. And although First Direct complains that Plaintiffs' requests are irrelevant to the jurisdictional issues at stake, First Direct never explains why documents reflecting preservation would not be highly relevant to showing an adverse or spoliation inference against a defendant's personal-jurisdiction defense if the defendant failed to maintain adequate records of its acts of disclosure. Thus, the

Court should direct First Direct to supplement its answers to these Interrogatories and RFPs to rectify the issues identified in Plaintiffs' Motion.

## **CONCLUSION**

Plaintiffs respectfully request the Court order First Direct to supplement its responses to interrogatories and requests for production to cure the deficiencies identified in Plaintiffs' Motion.

                                 Respectfully submitted,

Dated: August 12, 2025          **PEM LAW LLP**

                                */s Jessica A. Merejo*
                                _____
                                JESSICA A. MEREJO


## **CERTIFICATE OF SERVICE**

I electronically filed a true and complete copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing.

                                */s/ Jessica A. Merejo*
                                JESSICA A. MEREJO

7